**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK**
------------------------------------------------------------X
MENASHE KASHI,

                       Plaintiff,

       - against -

                                **ORDER**

                                CV 14-3774 (JMA) (AKT)

STMICROELECTRONICS, INC.,

                       Defendant.
------------------------------------------------------------X
**A. KATHLEEN TOMLINSON, Magistrate Judge:**

**I.**    P̲R̲E̲L̲I̲M̲I̲N̲A̲R̲Y̲ ̲S̲T̲A̲T̲E̲M̲E̲N̲T̲

       Plaintiff Menashe Kashi ("Plaintiff") brought this action to recover monetary relief based on STMicroelectronics, Inc.'s ("Defendant") alleged violations of the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 621 *et seq.*, the New York State Human Rights Law, § 296 *et seq.*, the New York City Human Rights Law, § 8-101 *et seq.*, and other appropriate rules, regulations, statutes and ordinances.  *See generally* Complaint ("Compl.") [DE 1].  Plaintiff, a former Account Executive and Market Development Engineer for Defendant, claims that Defendant terminated his employment on the basis of his age.

       Presently before the Court is Plaintiff's motion to amend his Complaint, pursuant to Fed. R. Civ. P. 15 and 16, to add new factual allegations supporting a claim for retaliation premised on Defendant's failure to rehire Plaintiff for his former position.  *See generally* Motion for Leave to Amend the Complaint [DE 58].   Defendant opposes the motion, arguing that in light of Plaintiff's lack of diligence in seeking leave to amend his Complaint, Plaintiff has failed to demonstrate "good cause" for such amendment.  *See generally* Defendant's Response to

Plaintiff's Motion for Leave to Amend Complaint ("Def's. Opp.") [DE 64].  Defendant further

argues that an amendment at this juncture would result in undue prejudice to Defendant.

For the reasons set forth below, Plaintiff's motion to amend the Complaint is

GRANTED.  Plaintiff is directed to file his Amended Complaint within five (5) business days of

entry of this Order.

## II.  BACKGROUND

### A.    The Complaint

The following allegations are taken from Plaintiff's original Complaint, filed on June 26,

2014.  *See generally* Compl.  Plaintiff commenced his employment with Defendant in or about

2000.  *Id*. ¶ 15.  Defendant terminated Plaintiff on or about February 28, 2013 as part of an

alleged reduction in force.  *Id*. ¶ 16.  At the time of his discharge, Plaintiff was 59 years old and

had 28 years of experience working with Defendant.  *Id*. ¶¶ 14, 19.  According to the Complaint,

"[p]rior to Plaintiff beginning his employment with Defendant in 2000, he was one of

Defendant's exclusive independent sales and marketing representatives for more than sixteen

years."  *Id*. ¶ 18.  Plaintiff alleges that during all of his years employed by Defendant directly, his

performance evaluations were average and above average, he achieved 90% to 100% of

Defendant's Management Business Objectives, and he had never been subjected to any

disciplinary measures.  *Id*. ¶¶ 21-22.

Plaintiff represents that on two separate occasions, his supervisor, Bob Doyle, told

Plaintiff that Dan Merchant, Vice President of Defendant's East Coast and North American

Division, wanted to hire only "young guys."  *Id*. ¶ 24.  Plaintiff represents that at the time of his

termination, he was the oldest member of his Sales Team, which had three other substantially

younger employees.  *Id*. ¶ 25.  Two of these younger individuals were hired within the six-month

period leading up to Plaintiff's termination, and the third was hired within the 12-month period

2

leading up to Plaintiff's termination. *Id.* ¶ 27. The younger employees were not terminated as part of the reduction in force which precipitated Plaintiff's termination. *Id.* ¶ 26. Plaintiff further alleges that during the six-month period preceding his termination, Defendant hired Curt Paterson as Distribution Manager and that Paterson was approximately 10 years younger than Plaintiff. *Id.* ¶ 28-29. At the direction of Defendant, Plaintiff trained and assisted Paterson. *Id.* ¶ 31. After Plaintiff was terminated, Paterson assumed substantially all of Plaintiff's duties and responsibilities. *Id.* ¶ 32. According to Plaintiff, at the time of his termination he was not offered any other employment positions with Defendant despite being qualified for the same. *Id.* ¶ 33.

Plaintiff alleges that he was terminated due to his age (59) in violation of the Federal Age Discrimination in Employment Act ("ADEA"), the New York State Human Rights Laws ("NYSHRL"), and New York City Human Rights Laws ("NYCHRL"). *See* Compl. at 5-7.

## B.    Relevant Procedural History

Plaintiff filed his Complaint on June 16, 2014. DE 1. At the September 10, 2014 Initial Conference, the Court entered a Case Management and Scheduling Order ("CMSO"). DE 12. In that CMSO, the parties were given a deadline of December 15, 2014 to make a formal motion under the Federal Rules to amend the pleadings. *Id.* During the Initial Conference, the Court informed the parties that they were looking at a likely discovery cut-off date of April 22, 2015. DE 10 ¶ 6. The deadline for fact discovery was later set at April 17, 2015. *See* DE 20. That date was thereafter held in abeyance and subsequently moved to April 1, 2016 [DE 30], and then again to June 1, 2016. *See* 4/4/2016 Electronic Order. On May 27, 2016, Plaintiff requested yet a further extension of the discovery deadline. DE 40. Counsel explained that an extension was necessary to permit the Plaintiff to complete one final deposition on June 15, 2016 and to provide Plaintiff with the opportunity to obtain the deposition transcript and serve any needed

3

Requests for Admissions and a follow-up letter regarding documents requested at the deposition. *Id*. The Court issued an Order on May 31, 2016, extending the discovery deadline to June 30, 2016 but cautioned the parties that there would be "no further extensions." DE 41.

On August 31, 2016, Defendants filed an application seeking a pre-motion conference before Judge Azrack for the purpose of filing a motion for summary judgment. DE 43. Plaintiff filed an opposition to Defendant's request on September 7, 2016, arguing that summary judgment motion practice was premature since there were unresolved discovery issues based on discovery responses served by Defendant on August 10, 2016. DE 44. Plaintiff further argued that those responses demonstrated to Plaintiff that he has a meritorious claim for retaliation and Plaintiff should therefore be permitted to amend his Complaint to include such a claim. *Id*.

Judge Azrack granted Defendant's request for a pre-motion conference and scheduled the conference for October 26, 2016. *See* 10/21/2016 Electronic Order. A further conference was held on January 31, 2017, at which time Judge Azrack granted "defendants motion to compel plaintiff to sign a Consent for Release of Information form from the Social Security Administration" for what appeared to be the purpose of facilitating settlement discussions. DE 49. The Court directed the plaintiff to "execute the consent form to the extent it grants defendant access to plaintiff[']s social security benefits application, award letter, and the amount of benefits he received." *Id*. Judge Azrack scheduled a settlement conference for March 23, 2017. *Id*. In advance of the conference, Judge Azrack denied a motion filed by Plaintiff [DE 42] seeking an extension of time to complete *expert* discovery. *See* 3/6/2017 Electronic Order. The denial was without prejudice and with leave to renew in the event the parties did not reach a settlement.

According to Judge Azrack's March 23, 2017 minute order, the parties were unable to settle the case. As such, Judge Azrack set a briefing schedule for Defendant's motion for

summary judgment and directed that "[t]he parties should complete discovery before Judge

Tomlinson." *Id*.  In light of Judge Azrack's Order, the Court directed the parties to advise the

Court whether any discovery issues needed to be addressed before the parties briefed their

summary judgment motions.  3/24/2017 Electronic Order.  Counsel for Defendant submitted a

response on March 28, 2017 [DE 52], and counsel for Plaintiff subsequently filed an application

seeking leave to file a motion to compel discovery and to file an amended complaint.  DE 53.  In

his letter, Plaintiff's counsel represented there were "deficiencies in the Defendant's responses to

Plaintiff's Second Request for the Production of Documents, Plaintiff's Second Set of

Interrogatories, and Plaintiff's Requests for Admissions, which were served by the Defendant on

August 10, 2016."  *Id*. at 2.  Moreover, Plaintiff sought to amend his Complaint to add a claim

for retaliation, which, counsel represented, would require no additional discovery.  *Id*. at 3.

Counsel for Defendant filed a response to Plaintiff's application outlining his reasons for

opposing the request for leave to file a motion to compel and to amend the Complaint.  DE 54.

On April 18, 2017, the Court issued an Order granting that portion of Plaintiff's

application seeking leave to file an Amended Complaint and denying the portion of the

application seeking leave to file a motion to compel discovery.  *See generally* 4/18/2017 Order.

With regard to Plaintiff's Motion to Amend the Complaint, counsel filed a motion seeking an

extension of the briefing schedule.  DE 57.  The Court granted that request.  5/9/2017 Electronic

Order.  As such, Plaintiff's deadline to file his opening papers was extended to May 12, 2017 and

Opposition papers were to be filed by June 2, 2017.  The deadline for Plaintiff to file its Reply

was extended to June 12, 2017.  5/9/2017 Electronic Order.  On May 15, 2017, Plaintiff

requested a second extension of time, *nunc pro tunc*, to file his opening papers.  DE 60.  Counsel

explained that his motion to amend was filed on May 13, 2017 at 2:04 a.m., two hours and four

minutes after the deadline to do so had expired.  The reason for the late filing was an unanticipated interruption due to a medical emergency involving one of his clients who was seriously injured on May 12, 2017.  In light of these circumstances, counsel requested that the Court accept the motion as timely and informed the Court that opposing counsel consented to the relief sought.  Based on this information, the Court is granting Plaintiff's request for an extension of time to file the instant motion.

### C.    Discovery Leading up to Plaintiff's Request to File an Amended Complaint

Plaintiff seeks leave to amend his Complaint to add new factual allegations supporting a claim for retaliation premised on Defendant's failure to rehire Plaintiff for his former position. In his Memorandum of Law, Plaintiff sets forth the nature of the discovery that has purportedly revealed Plaintiff's meritorious claim.  On February 16, 2015, Plaintiff learned through Defendant's responses to interrogatories that at the time Plaintiff's employment was terminated in February 2013, his duties were split between Robert Doyle, Plaintiff's supervisor, and Curt Paterson, a Distribution Sales Representative for the Defendant.  Pl's. Mem. at 6; *see* Menashe Kashi Declaration in Support of Plaintiff's Motion to Amend Pleadings ("Kashe Decl.") [DE 58-1] ¶ 8.  Plaintiff also learned that beginning in January 2015, Plaintiff's job duties were performed by Robert Fryer.  Pl's. Mem. at 6; Kashe Decl." ¶ 8.  Plaintiff deposed Robert Doyle on March 31, 2018, Daniel Merchant on May 18, 2016 and Christie Laurie on June 15, 2016.  *Id.* Mr. Doyle testified that Defendant hired Fryer as an account executive for the Metro New York area, the same area for which Plaintiff was responsible.  *Id.* (citing Doyle Tr. 193: 4-22). According to Plaintiff, "Doyle admitted that the Plaintiff was qualified for the position for which Defendant hired Mr. Fryer."  *Id.* at 9.  Doyle further testified that "Plaintiff was never offered the position because Mr. Fyer was more qualified."  *Id.* (citing Doyle Tr. 194:2-21).  Doyle

identified Christie Laurie as the individual in the Human Resources Department with whom he communicated regarding personnel, including the reduction in force which resulted in Plaintiff's termination.  *Id*. (citing Doyle Tr. 15:10-13 and 38:2-233).

Plaintiff's counsel states that on June 15, 2016, he conducted Christie Laurie's deposition.  Laurie testified that "the company does not have a policy to recruit former employees that were subject to a RIF…[i]nstead…the Defendant follows their standard recruitment process, such that 'all are eligible to apply.'" *Id*. at 9-10.  According to Laurie, Defendant was "recruiting in the marketplace" and Fryer responded to an open position.  *Id*. at 10 (citing Laurie Tr. 166:4-14).  Laurie explained that she "'would have to go back and pull the actual posting.'" *Id*.  Plaintiff also conducted the deposition of Daniel Merchant, who was the "Vice-President Sales East" and Doyle's supervisor.  *Id*. at 10.  Merchant explained that Doyle would be the individual who had more information regarding the hiring of Fryer, and whether Plaintiff was qualified or considered for the position.  *Id*. 10-11 (citing Merchant Tr. 56:23-25, 57:2-6, and 97:19-35 and 98:2-21).

On June 30, 2016, Plaintiff served Defendant with a Second Request for the Production of Documents, which included a request for "all documents and electronic information that refer or relate to the posting and/or advertising to the position for which Robert Fryer was hired."  *Id*. at 11; *see* Plaintiff's Second Request for the Production of Documents annexed to the Declaration of Robert Connolly, Esq. ("Connolly Decl.") as Exhibit B [DE 58-4].  According to Plaintiff, in response to those demands, Defendant furnished a three-page "internal document."  *Id*.  Plaintiff represents that "it was at this time that the Plaintiff learned that the Defendant never posted the position, except internally."  *Id*.

### III.    LEGAL STANDARD

Rule 15(a) of the Federal Rules of Civil Procedure provides that in cases where a party cannot amend as a matter of course, "a party may amend its pleading only with the opposing party's written consent or the court's leave." *See* Fed. R. Civ. P. 15(a); *DaCosta v. City of New York*, No. 15-CV-5174, 2017 WL 5176409, at *8 (E.D.N.Y. Nov. 8, 2017), *reconsideration denied sub nom. DaCosta v. Tranchina*, 285 F. Supp. 3d 566 (E.D.N.Y. 2018).  Leave to amend is within the court's discretion.  *Krupski v. Costa Crociere S. p. A.*, 130 S.Ct. 2485, 2489 (2010) (citing *Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962)) (Rule 15(a) "gives a district court discretion to decide whether to grant a motion to amend a pleading before trial.").  A court "should freely give leave when justice so requires."  Fed. R. Civ. P. 15(a); *Iqbal v. Ashcroft*, 574 F.3d 820, 822 (2d Cir. 2009) (quoting Fed. R. Civ. P. 15(a)).  "Amendments are generally favored because they tend to facilitate a proper decision on the merits." *Johnson v. Landmark Hosp. LLC*, No. 14CV6839, 2016 WL 843286, at *2 (E.D.N.Y. Mar. 1, 2016) (citing *Blaskiewicz v. Cty. of Suffolk*, 29 F. Supp. 2d 134, 137 (E.D.N.Y. 1998)); *Allstate Ins. Co. v. Elzanaty*, 916 F. Supp. 2d 273, 302 (E.D.N.Y. 2013) (citing *Sokolski v. Trans Union Corp.*, 178 F.R.D. 393, 396 (E.D.N.Y. 1998)).

However, Rule 16(b) provides that where, as here, a court has adopted a discovery scheduling order, that order may only "be modified for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4).  The purpose of Rule 16(b) is "to offer a measure of certainty in pretrial proceedings, ensuring that at some point both the parties and the pleadings will be fixed." *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 339–40 (2d Cir. 2000) (internal citations and quotation marks omitted) (citing Fed. R. Civ. P. 16 advisory committee's note (1983 amendment, discussion of subsection (b)).  Thus, "[w]here a scheduling order has been entered, the lenient standard under Rule 15(a), which provides leave to amend 'shall be freely

given,' must be balanced against the requirement under Rule 16(b) that the Court's scheduling order 'shall not be modified except upon a showing of good cause.'" *Grochowski v. Phoenix Constr.*, 318 F.3d 80, 86 (2d Cir. 2003) (quoting Fed. R. Civ. P. 15 and 16)); *see Parker*, 204 F.3d at 340; *Perfect Pearl Co. v. Majestic Pearl & Stone, Inc.*, 889 F. Supp. 2d 453, 457 (S.D.N.Y. 2012). The balancing act between Rules 15(a) and 16(b) is necessary to prevent a scheduling order from being rendered meaningless and undermine a court's ability to manage its docket. *Eberle v. Town of Southampton,* No. 12 Civ. 4472, 2013 WL 6198298, at *2 (E.D.N.Y. Nov. 27, 2013).

Whether good cause exists under Rule 16(b) turns on the "diligence of the moving party." *Parker*, 204 F.3d at 340. To show good cause, "the movant must demonstrate that it is has been diligent in its effort to meet the Court's deadlines.'" *Chrebet v. Cnty. of Nassau*, No. 09 CV 4249, 2014 WL 1836835, at *11 (E.D.N.Y. May 8, 2014) (quoting *Sokol Holdings, Inc. v. BMD Munai, Inc.*, No. 05 CIV. 3749, 2009 WL 2524611, at *7 (S.D.N.Y. Aug. 14, 2009) *aff'd sub nom. Sokol Holdings, Inc. v. BMB Munai, Inc.*, No. 05 CV 3749, 2009 WL 3467756 (S.D.N.Y.). "In other words, the party must show that, despite its having exercised diligence, the applicable deadline could not have been reasonably met." *Sokol*, 2009 WL 2524611, at *8 (citing *Parker*, 204 F.3d at 340; *Rent–A–Center Inc. v. 47 Mamaroneck Ave. Corp.*, 215 F.R.D. 100, 104 (S.D.N.Y. 2003)). "A party fails to show good cause when the proposed amendment rests on information 'that the party knew, or should have known, in advance of the deadline.'" *Perfect Pearl v. Majestic Pearl & Stone, Inc.*, 889 F. Supp. 2d 453, 457 (S.D.N.Y. 2012) (quoting *Sokol*, 2009 WL 2524611, at *8); *see Lamothe v. Town of Oyster Bay*, No. 08–cv–2078, 2011 WL 4974804, at *5–6, (E.D.N.Y. Oct. 19, 2011).

9

While diligence is the "primary consideration" in the good cause analysis, it is not the only consideration. *See Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 244 (2d Cir. 2007) (addressing application of Rule 16(b) to situation where Rule 15(a) would otherwise permit amendment as of right). "The district court, in the exercise of its discretion under Rule 16(b), also may consider other relevant factors including, in particular, whether allowing the amendment of the pleading at this stage of the litigation will prejudice defendants." *Id.*; *see Hernandez v. Immortal Rise, Inc.*, No. 11 CV 4360, 2013 WL 1703529, at *1 (E.D.N.Y. Apr. 19, 2013) *adopted in part by*, 2014 WL 991715 (E.D.N.Y. Mar. 13, 2014); *Ritchie Risk Limited Strategies Trading (Ireland), Ltd. v. Coventry First LLC*, 282 F.R.D. 76, 79 n. 2 (S.D.N.Y. 2012).

Notwithstanding the foregoing principles, leave to amend may be denied where there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc." *Williams v. Citigroup Inc.*, 659 F.3d 208, 213-214 (2d Cir. 2011) (quoting *Foman*, 371 U.S. at 182); *SCS Commc'n, Inc. v. Herrick Co., Inc.*, 360 F.3d 329, 345 (2d Cir. 2004). In assessing futility, courts must analyze "whether a proposed pleading would be able to withstand a dispositive pretrial motion." *Themis Capital, LLC v. Democratic Republic of Congo*, No. 09 Civ. 1652, 2013 WL 1687198, at *6 (S.D.N.Y. Apr. 18, 2013) (citing *Parker*, 204 F.3d at 339); *Touchtunes Music Corp. v. Rowe Int'l Corp.*, 847 F. Supp. 2d 606, 621 (S.D.N.Y. 2012)). With respect to the Rule 15(a) factors, "[t]he party opposing the motion for leave to amend has the burden of establishing that an amendment would be prejudicial or futile." *See Cummings-Fowler v. Suffolk Cmty. Coll.*, 282 F.R.D. 292,

296 (E.D.N.Y. 2012) (citing *Blaskiewicz v. Cnty. of Suffolk*, 29 F. Supp. 2d 134, 137-38 (E.D.N.Y. 1998)).

## IV.    DISCUSSION

### A.    Good Cause Under Fed. R. Civ. P. 16(b)(4)

#### 1.    *The Parties' Contentions*

Pursuant to Fed. R. Civ. P. 16(b)(4), Plaintiff argues that he has demonstrated "good cause" to modify the December 15, 2014 deadline to amend his Complaint in light of evidence revealed in Defendant's discovery responses which were served on August 10, 2016.  Pl's. Mem. at 15.  In particular, Plaintiff asserts that the responses first alerted him to the fact that Defendant hired another individual, Robert Fryer, to fill a position for which Plaintiff was qualified, "without posting the position in any manner which would have provided notice to the Plaintiff that the position was open, and without Defendant advising the Plaintiff that the position was open and further, without Plaintiff having any knowledge that the position was open." *Id*. Plaintiff further argues that shortly thereafter, on September 7, 2016, he raised the issue of amending his Complaint in light of this information in his opposition to Defendant's request for a pre-motion conference before Judge Azrack.  *Id*. at 16.  Plaintiff represents that between August 10, 2016 and the filing of his opposition, he sought, without avail, the consent of Defendant to amend his complaint.  *Id*.

Defendant argues in its opposition that in light of Plaintiff's lack of diligence in seeking leave to amend his Complaint, Plaintiff has failed to demonstrate "good cause" to warrant modification of the scheduling order.  Defs.' Opp'n. at 4.  Defendant states that Plaintiff knew as early as February 16, 2015 that his replacement had been hired and that this is all the information Plaintiff needed in order to pursue a claim for retaliation.  *Id*. at 5.  Defendant further argues that Plaintiff could have immediately sought discovery related to the issue of whether Defendant

posted a job opening for his former position and then sought leave to amend the Complaint all prior to the date Defendant states was the deadline to amend the pleadings, December 15, 2015. *Id*. at 4.

Defendant further argues that the significance Plaintiff attributes to the August 10, 2016 discovery responses is misplaced since "whether or not ST posted the job is completely unrelated to the allegation that ST retaliated against him by not hiring him back into his former position." *Id*. Lastly, Defendant claims that it will be seriously prejudiced if Plaintiff is permitted to amend his complaint at this stage of the litigation. *Id*. at 8. Discovery, which closed more than 11 months ago, would need to be re-opened and witnesses, re-deposed, resulting in "additional costs and the additional disruption to [Defendant's] operations to defend against new claims that should have been brought over two years ago. *Id*. at 8. Moreover, Defendant has already served its motion for Summary Judgment. *Id*.

In his reply, Plaintiff reiterates that he exercised due diligence in pursuing discovery but did not have enough evidence to seek an amendment of the Complaint to add a claim for retaliation until he received Defendant's discovery responses on August 10, 2016. Def's. Reply at 1. Plaintiff points out that Defendant incorrectly cites December 15, 2015 as the deadline to amend the pleadings instead of the correct date, December 15, 2014. *Id*. Therefore, Plaintiff's counsel maintains he could not have timely sought leave to amend the Complaint after discovering, on February 16, 2015 that a replacement for Plaintiff Kashi had been hired. Plaintiff further argues that "Defendant fails to assert that it provided Plaintiff with any information that would have enabled him to know that Defendant never posted the vacant position, for which he was qualified," a required element of Plaintiff's retaliation claim. *Id*. at 2. Plaintiff also highlights that he sought leave to amend the Complaint on September 7, 2016, less

than a month after he received responses to his June 30 demands, and more than 6 months before

Defendant filed his motion for summary judgment. *Id.* Plaintiff further argues that the motion

should not be denied on the grounds that additional discovery is required since the additional

discovery "would be limited" and there were only two witnesses who traveled to New York to be

deposed, both of whom carry out some of their job duties in New York. *Id.* at 10.

      **2.**   *Analysis*

     At the outset, the Court notes that Plaintiff does not attach a copy of any proposed

amended complaint to his motion. A "[f]ailure to attach the proposed amendment or new

pleading is not necessarily fatal to the party's motion, but it may result in the court denying leave

to amend on the grounds that the court cannot evaluate the propriety of granting leave unless the

court has had an opportunity to review the substance of the proposed amendment." *Gulley v.

Dzurenda*, 264 F.R.D. 34, 36 (D. Conn. 2010) (citing 3 James WM. Moore et al., Moore's

Federal Practice ¶¶ 15. 17[1] (3d ed. 2004)); *but see Thomas v. Venditto*, 925 F. Supp. 2d 352,

366 (E.D.N.Y. 2013) (quoting *Ackermann v. N.Y.C. Dep't of Info. Tech. & Telecomms.*, No. 09–

CV–2436, 2010 WL 1172625, at *1 (E.D.N.Y. Mar. 24, 2010)) ("[A]ny motion to amend must

attach the proposed amended complaint specifying the new claims and/or defendants [the

plaintiff] intends to add."); *La Barbera v. Ferran Enterprises, Inc*., No. 06-cv-2678, 2009 WL

367611, at *3 (E.D.N.Y. Feb. 10, 2009) ("In order to meet the requirements of particularity in a

motion to amend, a complete copy of the proposed amended complaint must accompany the

motion so that both the Court and the opposing party can understand the exact changes sought.").

     Courts have also denied leave to amend if the court finds that the defendant was

prejudiced by the plaintiff's failure to attach the proposed amended pleading. *See Am. Tissue,

Inc. v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 233 F.R.D. 327, 329 (S.D.N.Y. 2005)

("Although the Court cannot find any rule that clearly requires that a proposed amended

13

complaint be filed with a motion to amend, under the circumstances [the plaintiff's] failure to attach any proposed amended complaint to its motion was prejudicial to [the defendant].")); *see also State Trading Corp. of India v. Assuranceforeningen Skuld*, 921 F.2d 409, 418 (2d Cir. 1990) (citing *Twohy v. First Nat. Bank of Chicago*, 758 F.2d 1185, 1197 (7th Cir. 1985)) (Courts have interpreted a failure to include a proposed amended complaint as a sign of "lack of diligence and good faith."). However, "[i]f the movant's papers adequately explain the basis for, and nature of, the proposed amendment, [ ] the failure to attach a proposed amended complaint to the motion is not necessarily fatal." *Rozenzweig v. ClaimFox,* Inc., 251 F. Supp. 3d 449, 456 (E.D.N.Y. 2017) (citing *Murray v. New York*, 604 F. Supp. 2d 581, 588 (W.D.N.Y. 2009) (internal quotation marks omitted). Here, because Plaintiff's Memorandum of Law to some degree explains the proposed amendment, the Court will not deny the instant motion based on Plaintiff's failure to attach a proposed amended complaint and will instead consider the facts included in the memorandum.

Having considered the arguments presented by both parties, the Court finds that, although Plaintiff has not been a model of diligence in seeking leave to amend his Complaint, he has demonstrated the requisite "good cause" to modify the scheduling order in the manner he seeks here. As discussed in detail below, many of the delays that have contributed to the filing of the instant motion at this late stage were precipitated by discovery disputes and a failed attempt at settlement. Plaintiff represents that it was through discovery responses served on February 16, 2015 that he discovered Fryer had been hired in January 2015 to perform Plaintiff's former job duties. Pl.'s Mem. at 6; *see* Defendant's Objections and Answers to Plaintiff's First Set of Interrogatories to Defendant [DE 22-2] at 6. Those responses were subsequently the subject of a motion to compel. *See* DE 22. On April 9, 2015, the Court issued an order holding in abeyance

the deadlines set forth in its Case Management and Scheduling Order pending resolution of Plaintiff's discovery motion. *See* April 9, 2015 Electronic Order. The Court issued a further order on June 6, 2015 stating that it was putting discovery on hold pending resolution of the dispute. *See* June 9, 2015 Electronic Order. The Court rendered a determination on Plaintiff's motion to compel on December 9, 2015, at which time discovery resumed. *See* DE 30.

Between March and June, Plaintiff conducted the depositions of three of Defendant's employees, namely, Robert Doyle, Daniel Merchant, and Christie Laurie, Defendant's Human Resources Director. Pl's. Mem. at 6. Although Laurie's deposition did not take place until June 15, 2016, it did occur prior to the June 30, 2016 fact discovery deadline. During her deposition, Laurie testified, in relevant part, as to the manner in which Fryer was hired, explaining that Defendant had been "recruiting in the marketplace." *Id*. at 10 (citing Laurie Tr. 166:4-14). Following this representation, Plaintiff's counsel requested the production of "the actual posting" for the position. *Id*. Laurie explained that she would need to "go back and pull the actual posting." *Id*. Laurie further provided that although she was not aware of where the position was posted, Defendant "d[id] a lot with LinkedIn, Career Builder, on a lot of the job boards, and ST.com." *Id*. (citing Laurie Tr. 184:15-25 and 185:1-6). She further testified that the majority of positions are posted on the Defendant's website ST.com, but not all. *Id*.

According to Plaintiff, Laurie's representations regarding the posting prompted Plaintiff to serve Defendant with additional discovery demands on June 30, 2017. Pl's. Mem. at 15. Defendant's responses to those demands were served on August 10, 2016. *Id*. at 16. Shortly thereafter, on September 7, 2016, Plaintiff notified Judge Azrack of Plaintiff's intent to amend the Complaint based on those discovery responses. DE 44. Discussions of settlement ensued on October 26, 2016 [*see* DE 48] and continued for an extended period of time until March 23,

2017, when Judge Azrack determined that this case was not amenable to settlement.  DE 50.  The following day, this Court issued an Order directing the parties to notify it whether any further discovery was needed prior to engaging in summary judgment motion practice.  DE 51.  Less than a week later, Plaintiff's counsel requested that he be permitted to amend the Complaint to include a claim for retaliation premised on failure to hire.  DE 53.  Based on this timeline, the Court concludes that although Plaintiff's counsel could have acted more diligently with regard to his pursuit of discovery, some of the circumstance which have delayed this case, including the initiation of the process of amending the Complaint, were not solely attributable to Plaintiff.

Defendant argues, however, that Plaintiff had all the information he needed to seek leave to amend his Complaint in February 2015 when he discovered that Fryer had been hired to replace him.  *Id.* at 5-6.  In this regard, Plaintiff states that "whether or not ST posted the job is completely unrelated to the allegation that ST retaliated against him by not hiring him back into his former position."  Def's Opp'n. at 5.  In order to state a claim for retaliation under the ADEA or NYSHRL, a plaintiff must allege, in relevant part, an "adverse employment action."  A failure to rehire, as alleged by Plaintiff here can constitute a type of adverse employment action.  Under the ADEA, NYSHRL and NYCHRL, to adequately allege a failure to rehire, a plaintiff must allege that he or she applied for the position and was rejected — referred to as the "specific application requirement."  *See Hannah v. Wal-Mart Stores, Inc*., No. 3:12-CV-01361, 2016 WL 554771, at *9 (D. Conn. Feb. 11, 2016) (quoting *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S. Ct. 1817, 1824, 36 L. Ed. 2d 668 (1973), *holding modified by Hazen Paper Co. v. Biggins*, 507 U.S. 604, 113 S. Ct. 1701, 123 L. Ed. 2d 338 (1993)) *altered on reconsideration in non-relevant part*, No. 3:12-CV-01361, 2016 WL 3101997 (D. Conn. June 2, 2016); *see also Wang v. Phoenix Satellite Television US, Inc*., 976 F. Supp. 2d 527, 537 (S.D.N.Y. 2013) (citing

16

*Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207

(1981)) (in the context of a motion to dismiss claims for failure to rehire under NYSHRL and

NYCHRL, the court considered whether the plaintiff had applied for the position).

       "A plaintiff may be excused from the specific application requirement if he was unaware

of the position …." *Beebe v. New York Times Co*., 666 F. Supp. 2d 321, 333 (E.D.N.Y. 2009)

(*Mauro v. S. New England Telecomms., Inc*., 208 F.3d 384, 387 (2d Cir. 2000)).  The

requirement is excused if the employee can demonstrate the following: "'(1) the vacancy at issue

was not posted, and (2) the employee either had (a) no knowledge of the vacancy before it was

filled or (b) attempted to apply for it through informal procedures endorsed by the employer.'"

*Jimenez v. City of New York*, 605 F. Supp. 2d 485, 497 (S.D.N.Y. 2009) (quoting *Petrosino v.*

*Bell Atlantic*, 385 F.3d 210, 227 (2d Cir. 2004)); *see Butts v. New York City Dep't Of Hous. Pres.*

*and Dev*., No. 00 CV 6307, 2007 WL 259937, at *11 (S.D.N.Y. Jan. 29, 2007) (With regard to

the exception to the specific application requirement, the court noted that "[t]he Second Circuit

also uses this same framework to evaluate state and local law claims that arise under the

NYSHRL and NYCHRL.") (citing *Brown v. Coach Stores, Inc*., 163 F.3d 706, 709-10 (2d Cir.

1998); *Storms v. Elec. Data Sys. Corp*., No. 01 Civ. 665A, 2004 WL 2480857, at *1 n. 1

(W.D.N.Y. Nov. 3, 2004), *aff'd sub nom. Butts v. NYC Dep't of Hous. Pres. & Dev*., 307 F. App'x

596 (2d Cir. 2009)).

       Based on the foregoing case law, the Court concludes that whether the exception to the

specific application requirement is applicable hinges on whether "the vacancy at issue was

posted."  Here, it was not until August 2016 that Plaintiff learned Defendant had not publically

posted a vacancy for Plaintiff's former position.  Therefore, contrary to Defendant's assertion,

Plaintiff did not have all of the information necessary to assert a claim of retaliation premised on failure to hire until August 2016.

In light of the above, the Court finds that Plaintiff has satisfied the "good cause" standard under Fed. R. Civ. P. 16(b). The analysis, however, does not end here. The Court must determine whether Plaintiff also meets the liberal standards of Rule 15(a),

**B.    Fed. R. Civ. P. 15(a)**

Fed. R. Civ. P. 15(a) provides that "a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." *See* Fed. R. Civ. P. 15(a); *Kassner*, 496 F.3d at 242. Notwithstanding the foregoing principle, leave to amend may be denied where there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc." *Williams v. Citigroup Inc*., 659 F.3d 208, 213–214 (2d Cir. 2011) (quoting *Foman*, 371 U.S. at 182); *SCS Commc'n, Inc. v. Herrick Co., Inc*., 360 F.3d 329, 345 (2d Cir.2004) (noting that under Rule 15(a), "leave to amend a pleading may only be given when factors such as undue delay or undue prejudice to the opposing party are absent") (emphasis in original). Defendant does not argue that Plaintiff's proposed amendment would be futile, rather he alleges that permitting Plaintiff to amend his Complaint at this juncture would be unduly prejudicial.

### 1.    *Futility*

#### a.    **Retaliation**

"[T]he ADEA, [ ] the NYHRL, and the NYCHRL each forbid employers from retaliating against employees who engage in protected activities." *Missick v. City of New York*, 707 F.

Supp. 2d 336, 356 (E.D.N.Y. 2010) (citing *Kessler v. Westchester Cty. Dep't of Soc. Servs.*, 461 F.3d 199, 20-065 (2d Cir. 2006) (addressing Title VII and ADEA retaliation); *Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002) (addressing NYHRL and NYCHRL retaliation); *Shepheard v. N.Y.C. Corr. Dep't*, 360 Fed. App'x. 249, 251 (2d Cir. 2010)). "The standards which apply to [the] ADEA retaliation claims generally govern retaliation claims under the NYHRL as well." *Dressler v. New York City Dept. of Educ.*, No. 10-3769, 2012 WL 1038600, at *12 (S.D.N.Y. March 29, 2012) (citing *Schiano v. Quality Payroll Systems, Inc.*, 445 F.3d 597, 609 (2d Cir. 2006)); *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 106 n.6 (2d Cir. 2010) ("The law governing ADEA claims has been held to be identical to that governing claims made under the NYHRL."). To state a *prima facie* case of retaliation under the ADEA or the NYSHRL, a plaintiff must demonstrate that (1) he/she "participated in a protected activity," (2) he/she "suffered an adverse employment action,"[1] and (3) "there was a causal connection between her engaging in the protected activity and the adverse employment action."[2] *See Gorzynski*, 596 F.3d at 110 (citing *Kessler*, 461 F.3d at 205-06); *Wanamaker v. Columbian Rope Co.*, 108 F.3d 462, 465 (2d Cir. 1997) (citing *Barber v. CSX Distrib. Svcs.*, 68 F.3d 694, 701 (3d Cir. 1995); *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1308 (2d Cir. 1995), *abrogated on other grounds by Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998)). Although the aforementioned framework constitutes "an evidentiary standard and we

---

[1]     With regard to claims for retaliation, "[t]he NYCHRL does not require a plaintiff to show an 'adverse employment action,' but only some act that was 'reasonably likely to deter a person from engaging in protected activity.'" *Dressler*, 2012 WL 1038600, at *12 (citing N.Y.C. Admin. Code § 8–107(7)); *Sotomayor v. City of New York*, 862 F. Supp. 2d 226, 258 (E.D.N.Y. 2012) (citing same), *aff'd*, 713 F.3d 163 (2d Cir. 2013).

[2]     "The standards which apply to [the] ADEA retaliation claims generally govern retaliation claims under the NYHRL as well. *Dressler*, 2012 WL 1038600, at *12 (citing *Schiano v. Quality Payroll Systems, Inc.,* 445 F.3d 597, 609 (2d Cir. 2006)).

are merely at the pleading stage," *Khan v. Hilton Worldwide, Inc.*, No. 14 CIV. 1011, 2015 WL 738108, at \*4 (S.D.N.Y. Feb. 20, 2015) (citing *Williams v. N.Y.C. Hous. Auth.*, 458 F.3d 67, 72 (2d Cir. 2006)), courts still consider these elements as they "provide an outline of what is necessary to render…claims for relief plausible." *Rodriguez v. Verizon Telecom*, No. 13-CV-6969, 2014 WL 6807834, at \*3 (S.D.N.Y. Dec. 3, 2014) (quoting *Sommersett v. City of N.Y.*, 09–cv–5916, 2011 WL 2565301, at \*5 (S.D.N.Y. June 28, 2011)).

"The NYCHRL is to be construed more broadly than its state and federal counterparts, and claims under the NYCHRL must be analyzed separately and independently." *Rodriguez*, 2014 WL 6807834, at \*8; *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 113 (2d Cir. 2013) (citing Restoration Act § 7 (amending N.Y.C. Admin. Code § 8–130). Courts are to "construe the statute liberally with the federal and state statutes as a floor but not a ceiling." Rodriguez, 2014 WL 6807834, at \*8 (citing The Local Civil Rights Restoration Act of 2005, N.Y.C. Local Law No. 85 (2005)). "[T]o prevail on a retaliation claim under the NYCHRL, the plaintiff must show that she took an action opposing her employer's discrimination, and that, as a result, the employer engaged in conduct that was reasonably likely to deter a person from engaging in such action." *Mihalik*, 715 F.3d at 112 (citing *Williams v. New York City Hous. Auth.*, 61 A.D.3d 62, 69, 872 N.Y.S.2d 27, 33-34 (2009)) (internal citation omitted).

Here, Plaintiff engaged in a protected activity when he commenced the instant suit on June 16, 2014, satisfying the first element of a claim for retaliation under the ADEA and NYSHRL, as well as the first element under NYCHRL. With regard to the second element of Plaintiff's claim under the ADEA and NYSHRL, courts have held that a failure to rehire constitutes an "adverse employment action." As set forth above, in order to establish a *prima facie* case for failure to rehire, a plaintiff must show the following: (i) "that he belongs to a

[protected class]; (ii) that he applied and was qualified for a job for which the employer was seeking applicants;[3] (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications." *Hannah*, 2016 WL 554771, at *9 (quoting *McDonnell Douglas Corp.*, 411 U.S. at 802); *Murphy v. Gen. Elec. Co.*, 245 F. Supp. 2d 459, 475 (N.D.N.Y. 2003) (quoting *Brown v. Coach Stores*, 163 F.3d 706, 709 (2d Cir. 1998)).

With regard to the first element of a claim for failure to rehire, Plaintiff was 59 at the time he filed the Complaint in this case and 61 when Defendant hired Fryer, rendering him a member of a protected class based on age. *See* 29 U.S.C. § 631(a) (class protected by the ADEA is defined as "individuals who are at least 40 years of age"); N.Y. Exec. Law § 296(3–a)(a) (applies to all employees over the age of eighteen); N.Y. City Admin. Code § 8–107(1) (no specific age limitation); *see Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 467 n.3 (2d Cir. 2001). Moreover, this Court has already determined that Plaintiff is exempt from the second element set forth above — the specific application requirement — since Defendant did not post the position, publicly, and Plaintiff was not otherwise aware of the position. The Court finds that, accepting Plaintiff's allegations as true, the third element — despite his qualifications, he was rejected — has also been satisfied. Plaintiff alleges that from 1985 to 2000, Plaintiff worked as a Sales Engineer for a company called J-Square, which acted as an independent representative for the Defendant, promoting and selling their products. Pl.'s Mem. at 5; *see* Kashe Decl. ¶ 7. Plaintiff began working for Defendant in or about August 2000, and, according to his Complaint, during all of his years of employment with the Defendant, his performance evaluations were

---

[3]    In a case in which the plaintiff alleged retaliatory failure to rehire under NYHRL, the court considered whether the plaintiff had applied for the position. *Hilton v. Bedford Paving, LLC*, 769 F. Supp. 2d 92, 103 (W.D.N.Y. 2010).

average and above average, he achieved 90% to 100% of Defendant's Management Business Objectives, and he had never been subjected to any disciplinary measures. Compl. ¶¶ 21-23. In total, Plaintiff "promoted and sold the Defendant's product line as both a direct employee and as an independent agent for a total of nearly twenty-eight (28) years." Pl's. Mem. at 5. The Court finds that Plaintiff has adequately alleged that he was qualified for the position.

Based on the above analysis, Plaintiff has adequately alleged an "adverse employment action." With regard to Plaintiff's claim under the NYCHRL, the Court is also satisfied that Plaintiff can adequately allege that Defendant "engaged in conduct that was reasonably likely to deter a person from engaging in such action." *Mihalik*, 715 F.3d at 112 (*Williams*, 872 N.Y.S.2d at 33–34); *see Khan, Inc*., 2015 WL 738108, at *6 (The court held that if "the denial of a plaintiff's job application is severe enough to be an adverse employment action for Title VII purposes, Khan's claim that he was not rehired for the "Secondary B–List Banquet Server" position because of his April 28, 2011 EEOC filing must meet the less stringent test of involving an action that would be reasonably likely to deter a person from opposing discrimination [under the NYCHRL].").

The Court turns to the third and final element of Plaintiff's retaliation claim under the ADEA and NYHRL. "[A] plaintiff may establish a causal connection either: '(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant.'" *Khan*, 2015 WL 738108, at *5 (citing *Gordon v. New York City Bd. of Educ*., 232 F.3d 111, 117 (2d Cir. 2000)).

Plaintiff sets forth allegations in his Complaint which, if accepted as true, constitute circumstantial evidence of discrimination for purposes of this motion. Plaintiff alleges that he was informed on two separate occasions by Doyle that Merchant, the Vice President of Defendant's East Coast, North American Division, had advised Doyle that he wanted to hire only young guys. Compl. ¶ 24. Plaintiff further alleges that at the time of his termination, the other three employees who were 10 to 15 years younger than Plaintiff were not terminated. *Id*. Moreover, of the three younger members of Plaintiff's sales team, two were hired within the six month period prior to Plaintiff's termination and one was hired within the twelve month period prior to Plaintiff's termination. *Id*. ¶ 27. Further, approximately six months passed between the filing of Plaintiff's Complaint and Defendant's decision not to rehire Plaintiff. In the Second Circuit, "time periods ranging from twelve days to eight months have been found to show the necessary temporal proximity." *Wilks v. Elizabeth Arden, Inc*., 507 F. Supp. 2d 179, 196 (D. Conn. 2007) (citing *Deravin v. Kerik*, No. 00CV7487, 2007 WL 1029895, at *11 nn. 21,22 (S.D.N.Y. Apr. 2, 2007)). With regard to temporal proximity, there is no bright line rule, however, and "a court must "exercise its judgment about the permissible inferences that can be drawn from temporal proximity in the context of particular cases." *Gomez v. Metro. Dist*., 10 F. Supp. 3d 224, 236 (D. Conn. 2014) (citing *Summa v. Hofstra Univ.*, 708 F.3d 115, 128 (2d Cir. 2013)). The Court finds that these circumstances adequately allege a causal connection as to the third element of a retaliation claim. Moreover, Defendant has not rebutted these allegations.

The Court considered whether Plaintiff's omission of a discussion regarding exhaustion of administrative remedies in connection with his claim for retaliation had any bearing on the outcome of the instant motion. The Court concludes that it does not, particularly in light of recent Second Circuit case law. In *Hardaway v. Hartford Pub. Works Dep't*, 879 F.3d 486, 491

23

(2d Cir. 2018), the Second Circuit held that "the burden of pleading and proving Title VII exhaustion lies with defendants and operates as an affirmative defense." *Id*. at 491; *see Waithe v. City of New York*, No. 16-CV-5510, 2017 WL 4220466, at *2 (S.D.N.Y. Sept. 21, 2017) (citing *Francis v. City of New York*, 235 F.3d 763, 768 (2d Cir. 2000)) ("Although administrative exhaustion is not a strict jurisdictional bar, it is a waivable precondition 'with which defendants are entitled to insist that plaintiffs comply.'"); *Cobb v. XSPORT Fitness, Inc*., No. 09 CV 3553, 2010 WL 1741370, at *4 (E.D.N.Y. Apr. 28, 2010) ("[E]xhaustion is an affirmative defense, not a jurisdictional bar to suit.") (collecting cases).  The Second Circuit has also applied its holding in *Hardaway* to claims arising under the ADEA.  *See Ayala v. United States Postal Serv*., No. 17-1218, 2018 WL 1414536, at *2 (2d Cir. Mar. 22, 2018); *Caputo v. Copiague Union Free Sch. Dist.*, 218 F. Supp. 3d 186, 192 (E.D.N.Y. 2016) (citing *Grey v. Promenade Rehab. and Care Ctr.*, 145 Fed. App'x. 705, 707 (2d Cir. 2005)) (With regard to the ADA and ADEA, the Court explained that although a plaintiff must timely file a charge with the EEOC and receive a right to sue notice, "it is not a jurisdictional requirement….Rather, exhaustion of remedies is a condition precedent, which can be waived by the parties.").  Based on this analysis, the Court concludes that Plaintiff need not plead exhaustion of administrative remedies.

### 2. *Prejudice*

Defendant argues that permitting Plaintiff to amend his Complaint at this late stage would unduly prejudice Defendant. "[C]onsiderations of undue delay, bad faith, and prejudice to the opposing party [are] touchstones of a district court's discretionary authority to deny leave to amend." *Krumme v. WestPoint Stevens Inc*., 143 F.3d 71, 88 (2d Cir. 1998) (citing *Barrows v. Forest Laboratories*, 742 F.2d 54, 58 (2d Cir. 1984) (footnote omitted); *Zahra v. Town of Southold*, 48 F.3d 674, 686 (2d Cir. 1995)).  "Factors relevant to a showing of prejudice include 'whether the assertion of new claims would:  (i) require the opponent to expend significant

24

additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiff from bringing a timely action in another jurisdiction.'" *Zubulake v. UBS Warburg LLC*, 231 F.R.D. 159, 161 (S.D.N.Y. 2005) (citing *Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993)). "A proposed amendment is especially prejudicial when discovery has been completed and a summary judgment motion has been filed." *Id.* (citing *Ansam Assocs., Inc. v. Cola Petroleum, Ltd.*, 760 F.2d 442, 446 (2d Cir. 1985))

Defendant argues that it will be required to "incur additional costs and the additional disruption to its operations to defend against new claims that should have been brought over two years ago." Def's. Opp'n. at 8. Moreover, discovery will need to be re-opened and witnesses who already traveled to New York will need to be re-deposed. *Id.* Although discovery in this case has closed and Defendant has served a motion for summary judgment on Plaintiff, the Court finds that permitting Plaintiff to amend his Complaint would not unduly delay disposition of this case. At least with regard to the discovery Plaintiff requires, discovery will be limited and will not require Defendant to expend significant resources. Moreover, "allegations that a party will be prejudiced solely because of time, effort and money" do not constitute the type of "substantial prejudice" that might warrant denial of a motion to amend. *Block*, 988 F.2d at 351 (citing *Strauss v. Douglas Aircraft Co.*, 404 F.2d 1152, 1158 (2d Cir. 1968) (determining that the district court abused its discretion in permitting the defendant to amend its answer to include a statute of limitations defense where the action was already time barred in alternative forum.); *Rozenzweig v. ClaimFox, Inc.*, 251 F. Supp. 3d 449, 457 (E.D.N.Y. 2017) ("Mere delay ... absent a showing of bad faith or undue prejudice, does not provide a basis for a district court to deny the right to amend.") (quoting *State Teachers Ret. Bd. v. Fluor Corp.*, 654 F.2d 843, 856 (2d Cir.

1981)) (citing *Commander Oil Corp. v. Barlo Equip. Corp.*, 215 F.3d 321, 333 (2d Cir. 2000)). The Court finds that Defendant has not carried its burden to establish the degree of prejudice which would warrant the denial of this motion.

## V.   <u>CONCLUSION</u>

Based on the foregoing analysis, Plaintiff's motion to amend the Complaint is GRANTED.  Plaintiff is directed to file an Amended Complaint within five days of entry of this Order.

**SO ORDERED.**

Dated: Central Islip, New York
        March 30, 2018

<u>/s/ A. Kathleen Tomlinson</u>
A. KATHLEEN TOMLINSON
U.S. Magistrate Judge